# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SANDOZ INC. and RAREGEN, LLC<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED THERAPEUTICS CORP. and SMITHS MEDICAL ASD, INC.<br><br>*Defendants*. | Case No. 19-cv-10170-BRM-LHG<br><br>**RAREGEN, LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**<br><br>**Return Date: November 18, 2019**<br><br>**Oral Argument Requested**<br><br>Document electronically filed |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................1

FACTS ....................................................................................................3

ARGUMENT ..........................................................................................9

      I.    Sanctions Pursuant To The Court's Inherent Authority Are Unavailable Because The Public Filing Was Inadvertent....................9

      II.   Sanctions Under Rule 37(b) Are Unavailable And Would Be Unjust Under The Circumstances ........................................................12

      III.  Defendants Have Failed To Show Any Harm....................................14

CONCLUSION .......................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**Cases**

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ............................................................................................. 11

*Clientron Corp. v. Devon IT, Inc.*,
   894 F.3d 568 (3d Cir. 2018) ............................................................................. 13

*Damiano v. Sony Music Entm't, Inc.*,
   2000 WL 1689081 (D.N.J. Nov. 13, 2000) ....................................................... 11

*Engage FTC. v. Lane Labs-USA, Inc.*,
   624 F.3d 575 (3d Cir. 2010) ............................................................................... 9

*Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*,
   No. 12-cv-787 (D.N.J. June 18, 2018) ......................................................... 12, 13

*Hyde & Drath v. Baker*,
   24 F.3d 1162 (9th Cir. 1994), as amended (July 25, 1994) ............................... 13

*In re Cendant Corp.*,
   260 F.3d 183 (3d Cir. 2001) ......................................................................... 14, 15

*John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*,
   318 F.3d 545 (3d Cir. 2003) ............................................................................. 11

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
   998 F.2d 157 (3d Cir. 1993) ............................................................................. 14

*Lipscher v. LRP Publ'ns, Inc.*,
   266 F.3d 1305 (11th Cir. 2001) .................................................................... 12, 13

*Lookout Windpower Holding Co., LLC v. Edison Mission Energy*,
   2011 WL 13238016 (W.D. Pa. Feb. 22, 2011) .................................................. 9

*Miller v. Ind. Hosp.*,
   16 F.3d 549 (3d Cir. 1994) ............................................................................... 14

*Nelson v. Nissan N. Am., Inc.*,
   2014 WL 12617593 (D.N.J. Dec. 22, 2014) ..................................................... 16

*Oneida Indian Nation v. Cty. of Oneida*,
    802 F. Supp. 2d 395 (N.D.N.Y. 2011) ................................................................10

*Penk v. Or. State Bd. of Higher Educ*,
    816 F.2d 458 (9th Cir. 1987) ..............................................................................11

*Perez v. Corpus Christi Indep. Sch. Dist.*,
    2018 WL 1518556 (S.D. Tex. Mar. 28, 2018) ...............................................9, 10

*Philpot v. Microbilt Corp*.,
    2018 WL 834619 (W.D. Ky. Feb. 12, 2018) .....................................................10

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    43 F.3d 65 (3d Cir. 1994) ..................................................................................11

*Saunders v. Vinton*,
    554 F. App'x 36 (2d Cir. 2014) ............................................................................9

*Shillitani v. United States*,
    384 U.S. 364 (1966)...............................................................................................9

*Smith & Fuller P.A. v. Cooper Tire Rubber Co*.,
    685 F.3d 486 (5th Cir. 2012) ..............................................................................12

*Vidal v. Experian Info. Sol Inc.*,
    2005 WL 281200 (E.D. Pa. Feb. 3, 2005) ............................................................9

*Youngevity Int'l, Corp. v. Smith*,
    2019 WL 1542300 (S.D. Cal. Apr. 9, 2019) ......................................................10

## Rules and Regulations

Fed. R. Civ. P. 37(b)(2)(C) .......................................................................................13

## PRELIMINARY STATEMENT

In an effort to distract from Plaintiffs' pending motion for a preliminary injunction against their anticompetitive conduct, Defendants move for unspecified sanctions based on an innocent filing mistake that was corrected by the Court and the parties within hours and thus caused no harm to Defendants. Plaintiff RareGen, LLC ("RareGen") and its counsel, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), take their obligations under the Confidentiality Order and the Local Rules seriously and sincerely regret that this mistake occurred and that it required attention from the Court, its staff, and Defendants, especially over a weekend. But we respectfully submit that, under the circumstances, Defendants' request for sanctions should be denied.

The facts are straightforward and undisputed. An experienced filing clerk was closely supervised by Quinn Emanuel and received clear instructions to file Plaintiffs' preliminary injunction brief under seal. That filing clerk intended to file the brief under seal, but he inadvertently filed the brief on the public docket on a Friday evening after the Court had closed for the day. Once Quinn Emanuel realized this mistake had been made, it worked diligently to prevent any potential harm— including by calling ECF Assistance lines, emailing the ECF Help Desk, filing a letter to the Court, contacting docket-monitoring companies who may have had the inadvertent filing available for download, and doing everything Defendants' counsel

demanded.  Thanks to these acts, the prompt attention from the Court and its staff, and the assistance of Defendants' counsel, the unredacted brief was available on the public docket for less than fifteen hours (from 6:30 pm on a Friday night until 8:41 am the next Saturday morning).

There is no evidence that the filing mishap harmed Defendants.  Defendants failed to identify any harm before they filed their motion—in fact, they completely failed to meet and confer with Plaintiffs—and Defendants' motion itself fails to identify any harm Defendants may have suffered from the inadvertent public disclosure.  Indeed, as Defendants' failure to allege specific harms caused by the inadvertent disclosure confirms, virtually none of Defendants' information in the preliminary injunction brief actually meets the applicable standard for sealing.

In this context, Defendants have not identified a valid basis for sanctions.  In the Third Circuit, the Court's inherent authority to address violations of discovery protective orders with civil contempt sanctions cannot be invoked when a party inadvertently violates a Court order, as was the case here.  Nor can the Court impose monetary sanctions pursuant to its inherent authority absent evidence of bad-faith conduct, which is not present here.  And Rule 37(b) sanctions are not a means to address violations of discovery confidentiality orders.  Even if they were, they should not be imposed here because it would be unjust to levy sanctions for a mistake that was inadvertent and quickly remedied.

# FACTS

RareGen's counsel, Quinn Emanuel, employs in its "New York Managing Clerk's Office" a group of professional filing clerks that routinely handles complex commercial filings.  On September 23, more than 10 days before the deadline for filing Plaintiffs' preliminary injunction brief, Quinn Emanuel attorneys contacted the Managing Clerk's Office to start preparations for the filing.  Declaration of Matthew K. Wasserman ("Wasserman Decl.") ¶ 2.  Quinn Emanuel attorneys informed the Managing Clerk's Office that the materials would need to be filed under seal.  *Id.*  Quinn Emanuel attorneys and the Managing Clerk's Office closely coordinated a protocol for filing and discussed the Court's ECF guidelines for filing materials under seal to ensure that Plaintiffs' filing would comply with all of the Court's rules.  *Id.* ¶¶ 3–4.  Quinn Emanuel attorneys provided clear instructions to the Managing Clerk's Office, both orally and in writing, that Plaintiffs' preliminary injunction brief was to be filed under seal.  Declaration of Heather K. Christenson ("Christenson Decl.") ¶¶ 4–6.

Consistent with the Local Rules, which permit "authorized agents" to use an ECF Filing User's login and password, D.N.J. ECF Policies & Procedures ¶ 4, Quinn Emanuel attorneys tapped Andrew Scott, Quinn Emanuel's Assistant Managing Clerk, to handle the filing of Plaintiffs' brief.  Wasserman Decl. ¶¶ 3–4.  Mr. Scott is a non-practicing attorney who is a member in good standing of the bar of the State

of New York.  Declaration of Andrew M. Scott ("Scott Decl.") ¶ 2.  Mr. Scott has more than ten years of experience with ECF filings, including approximately three years of experience filing documents under seal in the District of New Jersey.  *Id*. ¶¶ 3–4.  He understood from his discussions with Quinn Emanuel attorneys that the brief was to be filed under seal.  *Id.* ¶ 6.

At approximately 6:00 pm on October 4, Plaintiffs finalized their preliminary injunction brief and supporting exhibits, and Quinn Emanuel attorneys provided the documents to Mr. Scott with permission to file.  Christenson Decl. ¶ 6.  Quinn Emanuel attorneys again provided clear instructions to Mr. Scott that all materials were to be filed under seal.  *Id*.  Mr. Scott logged into the Court's ECF system, and he intended to file the brief under seal.  Scott Decl. ¶ 7.  The brief was nonetheless filed publicly.

Quinn Emanuel first received notice of the error at approximately 6:35 pm.  Christenson Decl. ¶ 7.  Quinn Emanuel attempted to contact the District of New Jersey's ECF Assistance Lines and ECF Help Desk, by email and telephone, to pull down the inadvertent public filing.  *Id.* ¶¶ 10–11; Scott Decl. ¶ 8.  Around the same time, Quinn Emanuel contacted Sandoz' counsel at Alston & Bird and told them that Quinn Emanuel would be reaching out to Defendants to inform them of the error.  Declaration of Michael D. Bonanno ("Bonanno Decl.") ¶ 5.  At 7:47 pm, counsel for Defendant United Therapeutics Corp. ("UTC") sent an email to Plaintiffs asking if

4

they intended to file the brief publicly.   *Id.* ¶ 6.   At 7:54 pm, Quinn Emanuel confirmed to Defendants that the brief had inadvertently been filed on the public docket.  *Id* ¶ 7.

At 8:04 pm, UTC asked Plaintiffs to provide "a full accounting TONIGHT of how this was allowed to happen and what steps have been taken to remedy it."  *Id.* ¶ 8.  Quinn Emanuel responded at 8:41 pm to explain what happened.  *Id*. ¶ 10.  At 9:06 pm, UTC sent an email to Plaintiffs, asking them to immediately:

(1)   file "a public letter to the Court that explains precisely how this occurred, what steps Plaintiffs have taken in response to their admitted violation of the protective order, and requests that the Court and/or the Clerk immediately remove Docket No. 106;"

(2)   file "a redacted version of their preliminary injunction motion;" and

(3)   "attempt to call all of the judges' chambers in the D.N.J. in an effort to find a judge or another court employee who is available tonight to correct the docket."

*Id*. ¶ 11.

At 9:53 pm, Thomas Pease, a partner at Quinn Emanuel who is admitted to this Court and who was actively involved in reviewing and editing the brief, emailed The Honorable Garrett Brown Jr., former Chief Judge of the District of New Jersey and now retired from the Court, to ask whether he had any suggestions for how to place the brief under seal over the weekend while the Clerk's office was closed. Declaration of Thomas D. Pease ("Pease Decl.") ¶ 4.   Judge Brown graciously

responded the next day to say that he had contacted the Clerk of Court, but by then the issue had already been resolved.  *Id*. ¶ 5.

At 10:03 pm, UTC told Plaintiffs the brief may be available for download from Law360's automatic docket scraper and asked Plaintiffs to contact Law360 to have the materials removed from Law360's website.  Bonanno Decl. ¶ 14.

At 10:31 pm, Quinn Emanuel wrote to Defendants to confirm it would file a letter to alert the Court to the filing error and file a redacted version of the brief.  *Id*. ¶ 15.  At the same time, Quinn Emanuel provided Defendants with a proposed set of redactions to the brief and invited Defendants to review and augment the redactions before the redacted brief was filed.  *Id*.  Quinn Emanuel also told Defendants it would write the Court's email address for proposed orders, as well as Magistrate Judge Goodman's email address for proposed orders, to request assistance.  *Id*.  And Quinn Emanuel confirmed it would contact Law360 to ensure the brief was removed from Law360's website.  *Id*.

At 10:36 pm, Quinn Emanuel reached out to its public relations firm for assistance contacting Law360.  *Id*. ¶ 16.  At 11:15 pm, Quinn Emanuel contacted Law360 to notify it that the brief might be available for download from Law360's automatic docket scraper.  *Id*. ¶ 17.  Quinn Emanuel asked Law360 to remove the brief for download from Law360's website.  *Id*.

At 11:33 pm, UTC sent an email directly to the Court's personal (.gov) email address to request assistance. *Id.* ¶ 18. Before being copied on that email, Plaintiffs' counsel did not have the Court's personal email address, and UTC's counsel never informed Plaintiffs that it possessed the Court's personal email address. *Id.*

At 11:35 pm, Quinn Emanuel filed a letter on the docket in which Plaintiffs alerted the Court to the mistake and asked it to place the inadvertent filing under seal. ECF No. 113. By 11:44 pm, the Court had responded to the email from UTC and ordered the brief to be placed under seal. Bonanno Decl. ¶ 20.

At 11:43 pm, Defendants sent Plaintiffs a set of additional redactions to the brief. *Id.* ¶ 19.

On October 5, at 1:22 am, Quinn Emanuel filed the redacted version of Plaintiffs' brief on the public docket that included all of the redactions requested by Defendants. ECF No. 114. By 8:41 am, the Court's staff had placed the brief under seal. Bonanno Decl. ¶ 22.

At 2:38 pm, UTC's counsel wrote to Plaintiffs to notify them that the public version of the brief "appears to be available for download on PacerMonitor." *Id.* ¶ 23. At 2:49 pm, Quinn Emanuel emailed PacerMonitor to notify it that the brief may be available for download from its automatic docket scraper. *Id.* ¶ 24. Quinn Emanuel asked for the brief to be deleted and removed from PacerMonitor's website. *Id*.

On Monday, October 7, at 9:45 am , Law360 confirmed to Quinn Emanuel that the brief had been removed from its website. *Id.* ¶ 26. At 10:28 am, PacerMonitor confirmed to Quinn Emanuel that the brief had been removed from its website. *Id.* ¶ 27. At 10:40 am, Quinn Emanuel emailed PacerPro to notify it that the brief may be available for download from its automatic docket scraper. *Id.* ¶ 28. Quinn Emanuel asked for the brief to be deleted and removed from PacerPro's system. *Id.* At 3:40 pm, PacerPro confirmed to Quinn Emanuel that the brief had been removed from its system. *Id.* ¶ 29.

At 9:52 pm, Quinn Emanuel informed Defendants that Law360, PacerMonitor, and PacerPro had all removed the brief from their respective websites and systems. *Id.* ¶ 30. Quinn Emanuel continues to take steps to limit further disclosure of the inadvertent filing and to monitor public sources for the unredacted brief.

Despite Quinn Emanuel doing everything Defendants demanded, on October 15, without meeting and conferring with Plaintiffs, Defendants moved the Court to impose sanctions for the inadvertent public filing pursuant to the Court's inherent authority or Rule 37. Mot. 1.

# ARGUMENT

## I.   Sanctions Pursuant To The Court's Inherent Authority Are Unavailable Because The Public Filing Was Inadvertent

Although "courts have inherent power to enforce compliance with their lawful orders through civil contempt," *Shillitani v. United States*, 384 U.S. 364, 370 (1966), the Third Circuit has recognized that civil contempt sanctions are not proper when a party "(1) has taken all reasonable steps to comply with the valid court order, and (2) has violated the order in a manner that is merely 'technical' or 'inadvertent.'" *FTC. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 591 (3d Cir. 2010).

Consistent with the Third Circuit's approach, federal courts routinely decline to impose sanctions for inadvertent violations of discovery confidentiality orders. *See Lookout Windpower Holding Co., LLC v. Edison Mission Energy*, 2011 WL 13238016, at *3–4 (W.D. Pa. Feb. 22, 2011) (declining to impose sanctions when confidential documents produced in litigation were inadvertently provided to a party's investment banker); *Vidal v. Experian Info. Sols., Inc.*, 2005 WL 281200, at *2 (E.D. Pa. Feb. 3, 2005) ("If someone by mistake fails to file a confidential document under seal, the document is placed under seal once the party realizes the mistake.  There would be no penalty for such an inadvertent disclosure."); *Saunders v. Vinton*, 554 F. App'x 36, 39 (2d Cir. 2014) (denying motion for sanctions when party unintentionally filed unredacted document on the public docket); *Perez v. Corpus Christi Indep. Sch. Dist.*, 2018 WL 1518556, at *9 (S.D. Tex. Mar. 28, 2018)

(denying motion for sanctions when counsel's legal assistant mistakenly failed to file documents under seal); *Youngevity Int'l, Corp. v. Smith*, 2019 WL 1542300, at *16 (S.D. Cal. Apr. 9, 2019) (denying motion for sanctions when party filed exhibit without confidentiality designation on the docket in violation of protective order); *Oneida Indian Nation v. Cty. of Oneida*, 802 F. Supp. 2d 395, 400–401 (N.D.N.Y. 2011) (declining to impose sanctions because party's "failure to file under seal was accidental" and "it attempted to contact the Clerk's office and opposing counsel regarding its mistake"); *Philpot v. Microbilt Corp.*, 2018 WL 834619, at *7 (W.D. Ky. Feb. 12, 2018) (denying motion for sanctions when confidential documents were filed as a part of the public record because party "did not act out of bad faith").

Here, RareGen and Quinn Emanuel took reasonable steps to comply with the Confidentiality Order—and did everything Defendants demanded after the mistake was identified. Quinn Emanuel attorneys provided clear and express instructions to its expert filing team that the brief should be filed under seal. Christenson Decl. ¶¶ 4–6. Quinn Emanuel attorneys closely supervised the work of the filing clerk. *Id.* The filing clerk, Mr. Scott, had filed documents under seal in federal court using ECF countless times before. Scott Decl. ¶¶ 3–4. And the violation of the Confidentiality Order was clearly "inadvertent." Mr. Scott intended to file the brief under seal, consistent with the directions provided by counsel of record. *Id.* ¶¶ 6–7.

The public filing of the brief was an accident, which means civil contempt sanctions are not available.

Tellingly, Defendants failed to cite a single case in their motion where a Court has awarded sanctions pursuant to its inherent authority for an inadvertent violation of a discovery confidentiality order.  *See Damiano v. Sony Music Entm't, Inc.*, 2000 WL1689081, at \*2, 12 (D.N.J. Nov. 13, 2000) (imposing civil contempt sanctions after a party intentionally posted confidential discovery materials on the internet); *John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (imposing civil contempt sanctions for violation of a preliminary injunction order); *Penk v. Or. State Bd. of Higher Educ.*, 816 F.2d 458, 466 (9th Cir. 1987) (affirming exclusion of expert testimony for violation of a case scheduling order). Nor did Defendants cite a single case where a court invoked its inherent authority to impose a sanction of "attorneys' fees and costs," Mot. 1, in the absence of bad-faith conduct.  That is because a court cannot exercise its inherent authority to impose monetary sanctions in the absence of bad faith.  *See*, *e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49–50 (1991); *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n.11 (3d Cir. 1994).  There is no evidence of bad-faith conduct here, nor do Defendants even try to argue that Plaintiffs or their counsel acted in bad faith.

Moreover, Defendants have proffered no evidence that they were harmed by the mistake.  *See infra* Section III.

The Court therefore should not exercise its inherent authority to sanction Plaintiffs or their counsel here.

## II. Sanctions Under Rule 37(b) Are Unavailable And Would Be Unjust Under The Circumstances

Defendants have not established that Rule 37(b) is available to address the inadvertent violation presented here.  As a threshold matter, a circuit split exists concerning whether Rule 37(b) even applies to violations of confidentiality or protective orders.  *Compare Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001) ("Rule 37(b)(2) does not mention Rule 26(c) protective orders, but rather states that it applies when a party 'fails to obey an order to provide or permit discovery.' . . . [A] Rule 26(c) protective order is not 'an order to provide or permit discovery,' and therefore, such orders do not fall within the scope of Rule 37(b)(2).") *with Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) (rejecting the Eleventh Circuit's reasoning in *Lipscher*).

RareGen has not identified a single decision in which the Third Circuit has endorsed Rule 37(b) as a means to punish violations of confidentiality or protective orders.  And in the lone decision RareGen has identified in this district that imposed Rule 37(b) sanctions for an inadvertent violation of a protective order, which was not cited by Defendants in their motion, the non-moving party did not contest the application of Rule 37(b) and there were other violations of the protective order beyond just a single inadvertent filing.  *See* Defs.' Opp'n Br., *Engage Healthcare*

*Commc'ns, LLC v. Intellisphere, LLC*, No. 12-cv-787 (D.N.J. June 18, 2018), ECF No. 290; *id.* at Order (Jan. 23, 2019), ECF No. 316. Thus, RareGen respectfully submits that the Court should follow the Eleventh Circuit's reasoning in *Lipscher* and decline to extend Rule 37(b) to impose sanctions for inadvertent public filings.

But even if Rule 37(b) applied here, sanctions would still be inappropriate because the rule expressly states that sanctions should not be awarded when the "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Rule 37(b)(2)(A) is not equivalent to carte blanche; it limits courts' discretion in two ways: First, any sanction must be 'just'; second, the sanction must be *specifically related* to the particular 'claim' which was at issue in the order to provide discovery." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (quotations omitted). "[G]ood or bad faith may be a consideration in determining whether imposition of sanctions would be unjust." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994), *as amended* (July 25, 1994). Plaintiffs and their counsel acted in good faith here and they specifically intended to comply with the terms of the Confidentiality Order; thus, an award of sanctions would be unjust.[1]

---

[1] If the Court were to determine an award of expenses is warranted under Rule 37(b), further briefing would be required. Defendants have proffered only the number of hours they expended, purportedly to address the filing mistake, but they have not offered detailed billing records for the Court's review. And for some reason they appear to seek expenses for time expended outside of the 15-hour window that

13

Rule 37 sanctions would be particularly unjust in this case because in addition to RareGen's good-faith efforts to comply with the Confidentiality Order, Defendants have proffered no evidence that the public filing harmed them in any way. *See infra* Section III.

## III.    Defendants Have Failed To Show Any Harm

Although Plaintiffs agreed that the initial brief and exhibits should be filed under seal due to designations made under the Confidentiality Order, little, if any, of the information contained therein will actually remain under seal.   The information the parties designated for protection under the Confidentiality Order is only temporarily sealed until the Court determines what parts of the brief, if any, meet the strict requirements of the local rules for permanent sealing.  *See* Civ. L. R. 5.3(c).   "[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993).  Thus, Defendants must shoulder "the heavy burden of showing" that their information in the brief should be sealed because it "is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury" to them. *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (quotations omitted).  "Broad allegations of

---

the brief was on the public docket, which would be both improper and unreasonable under the circumstances.

harm, bereft of specific examples or articulated reasoning, are insufficient" to satisfy that standard.  *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).

Defendants' motion for sanctions fails to explain how the overnight disclosure of their information in the brief caused them a clearly-defined injury.  Without the ability to establish such an injury, Defendants will not ultimately be able to meet their burden to keep such information sealed from the public record.  Indeed, nearly all of the information in the brief that Defendants asked Plaintiffs to file under seal is not protected from disclosure, or otherwise poses no threat of competitive injury at all, including:  (1) publicly available information, such as (a) statements made by UTC in SEC filings, *e.g.,* Brief at 6, ECF No. 106-1 (publicly-available terms of the UTC-Sandoz settlement agreement), (b) earnings calls, *e.g., id.* at 27–28 (quoting Exs. 1013 and 1014—transcripts of UTC earnings calls), and (c) public court documents, *id.* at 29 (Ex. 1015); (2) testimony and documents relating to events that transpired years ago, *e.g., id.* at 7–8 (describing discussions between Defendants in 2015, 2016, and 2017 concerning now-superseded agreements); (3) information that is independently and widely known outside of this litigation to third parties, including Plaintiffs, *e.g., id.* at 10 (describing conversations between Smiths and RareGen's CEO), *id.* at 37 (describing the results of RareGen's own pump diligence); *id.* at 13, 38 (discussing "end of life" notices Smiths broadly disseminated to its customers); and (4) testimony and documents that do not reveal trade secrets

15

or forward-looking competitive strategies, *e.g., id.* at 7–15 (describing Defendants' efforts to implement cartridge restrictions and quoting from various communications that Defendants **received** from third parties).

None of that information should have been sealed in the first place.  *See Nelson v. Nissan N. Am., Inc.,* 2014 WL 12617593, at *5–6 (D.N.J. Dec. 22, 2014) ("[T]he Court notes that 'historical and not prospective information' is generally not considered a trade secret by the courts. . . . The mere allegation that [Defendants] will suffer some undefined competitive harm from the release of this outdated information is insufficient to overcome the presumptive right of public access.").  It would be unjust to issue sanctions for the mistaken publication of information that will soon become public notwithstanding Defendants' designations under the Confidentiality Order.

## CONCLUSION

For all these reasons, Defendants' motion for sanctions should be denied.

Dated: November 4, 2019                    Respectfully Submitted,

                                           */s/ Thomas D. Pease*
                                           QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
                                           Thomas D. Pease (NJ Bar No. 055421994)
                                           Peter E. Calamari (*pro hac vice*)
                                           Heather K. Christenson (*pro hac vice*)
                                           51 Madison Avenue, 22nd Floor
                                           New York, NY 10010
                                           Tel: (212) 849-7000
                                           Fax: (212) 849-7100

thomaspease@quinnemanuel.com
petercalamari@quinnemanuel.com
heatherchristenson@quinnemanuel.com

Ethan C. Glass (*pro hac vice*)
Michael D. Bonanno (*pro hac vice*)
Matthew K. Wasserman (*pro hac vice*)
Samantha T.Z. Scanlan (*pro hac vice*)
1300 I Street NW, Suite 900
Washington, D.C. 20005-3314
Tel: (202) 538-8000
Fax: (202) 538-8100
ethanglass@quinnemanuel.com
mikebonanno@quinnemanuel.com
matthewwasserman@quinnemanuel.com
samanthascanlan@quinnemanuel.com

**Attorneys for Plaintiff RareGen, LLC**

17