**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

————————————————————————
                                                    :
SANDOZ, INC. and                                    :
RAREGEN, LLC,                                        :
                                                    :
                    Plaintiffs,                     :
                                                    :        Case No. 3:19-cv-10170-BRM-LHG
           v.                                       :
                                                    :
UNITED THERAPEUTICS, CORP. and                      :                **OPINION**
SMITHS MEDICAL ASD, INC.,                           :
                                                    :
                    Defendants.                     :
————————————————————————                            :

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants United Therapeutics Corp., ("UTC") and Smiths Medical ASD Inc., ("Smiths Medical") (collectively, "Defendants") Motion for Sanctions against Plaintiffs Sandoz Inc. ("Sandoz") and RareGen LLC's ("RareGen") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 37 for violating the Court's Discovery Confidentiality Order. (ECF No. 121.) Plaintiffs oppose the Motion. (ECF Nos. 139, 145.) Having reviewed the parties' submissions filed in connection with the motions and having declined to hear oral argument to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion for Sanctions is **DENIED**.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

While this lawsuit concerns the sale of drugs used to treat patients diagnosed with pulmonary arterial hypertension, or PAH, this Motion concerns the publication of confidential information in the course of submitting briefing to this Court. The facts of this case are well known to the Parties and were set down at length in the Opinion of this Court ruling on Plaintiffs' Motion

1

for a Preliminary Injunction (ECF No. 168). The Court recites only those facts and procedural history necessary to its disposition.

### A. Factual Background

As part of discovery for this litigation, the parties negotiated a Stipulated Confidentiality Order (the "Confidentiality Order") that the Court entered on June 6, 2019. (ECF No. 55.) This Order protects material designated by the producing party as "Highly Confidential" and/or "Confidential" from unauthorized disclosure. (*Id.* ¶¶ 2, 21.) Pursuant to the Confidentiality Order, material designated "Highly Confidential" may be disclosed only to outside counsel, the author of the material, consultants who sign an agreement to be bound by the Stipulated Confidentiality Order, and the Court and its staff. (*Id.* ¶ 14(a).) Material designated "Confidential" is to be treated the same, except that each party also may disclose it to those in-house counsel specifically identified in the protective order. (Id. ¶ 14(b).) If Confidential or Highly Confidential information is disclosed without the proper designations and redactions, any counsel making the disclosure must secure either the return or written certification of the destruction of all inadvertently disclosed material. (*Id.* ¶ 16.)

At 6:35 p.m., on Friday, October 4, 2019, Plaintiffs publicly filed a Memorandum in Support of their Motion for a Preliminary Injunction (the "Brief"). (ECF No. 106-1.) Defendants contend this Brief contained information Defendants designated "Highly Confidential" and "Confidential." By way of a 7:47 p.m. email, Defendants asked Plaintiffs if the Brief had been published publicly by accident. (*See* Defs.' Ex. B (ECF No. 121-6) at 10.) In a 7:54 p.m. emailed response, Plaintiffs acknowledged the Brief had "inadvertently" been publicly published and stated that it "contains information that has been designated as Highly Confidential." (*Id.* at 9.) Plaintiffs also stated that "[o]nly the Clerk's Office can modify a docket entry once a document is filed, and

[the Office] is closed until Monday morning," meaning Plaintiffs would not be able to address this error until then. (*Id.*) Defendants say they attempted to contact PACER to temporarily remove the filing from the docket and left a voicemail on the Court's Emergent Matters line. (Defs.' Statement of Facts (ECF No. 121-1) at 4.) Defendants also contacted their local counsel to seek ways to correct this error. (*Id.* at 4-5.)

In an 8:08 p.m. email, Defendants asked Plaintiffs to explain how this public filing had occurred and what steps were being taken to remedy it. (ECF No. 121-6 at 8.) Plaintiffs responded in an 8:41 p.m. email stating that when they saw the 6:35 p.m. ECF-generated notice that the brief was publicly filed they "called the ECF assistance line and emailed the ECF email address requesting emergency assistance," but received no responses. (*Id.* at 7-8.) Plaintiffs further stated, "Apparently, only the Clerk's Office can change a filed docket entry, and the office is only open between 9 am and 4 pm. The ECF Assistance Line opens at 8 am, and we plan to call them first on Monday to try to fix the error." (*Id.* at 8.)

In a 9:06 p.m. email, Defendants asked Plaintiffs to

> "(1) file a letter with the Court requesting that the Court immediately remove the filing from the public docket, (2) file a redacted version of the Brief, and (3) attempt to call the chambers in the District of New Jersey in an effort to find a judge or another court employee who may be available to correct the docket."

(ECF No. 121-1 at 5 (citing ECF No. 121-6 at 6-7).) Defendants said filing a redacted version of the Brief would put "the parties, the Court, and the public" on notice "as to the full extent of confidential and highly confidential information that should not have been disclosed." (ECF No. 121-6 at 7.)

Defendants allege the Law360 website published a link to the Brief by 9:47 p.m. (*See* Defs.' Ex. C (121-X).) In a 10:03 p.m. email, Defendants alerted Plaintiffs that the Brief had been

published by Law360, and asked Plaintiffs to contact Law360 and any other similar services to request that those websites remove access to the Brief. (ECF No. 121-6 at 6.) In a 10:31 p.m., email, Plaintiffs said they would write a letter to the Court, they would contact Law360 to request that it stop providing access to the Brief, and they would file a redacted Brief. (*Id.* at 4-5.). Plaintiffs attached a copy of a proposed redacted Brief for that purpose and requested that Defendants suggest any further redactions. (*Id.* at 5.) Plaintiffs said they planned to file a final version of the redacted Brief "just before midnight." (*Id.*) Defendants responded by email at 11:43 p.m. with additional proposed redactions, before indicating in an 11:58 p.m. email that they had no more proposed redactions. (*Id.* at 3, 4.)

Ultimately, Defendants contacted the Court directly at 11:33 p.m. via a direct email address for the Court given by the Court to Defendants in another matter. (ECF No. 121-1 at 6.) Defendants informed the Court about the issue and requested that the Brief be sealed. Via an 11:44 p.m. email, the Court granted Defendants' request. (*Id.*) At 1:23 a.m., on October 5, 2019, Plaintiffs filed a redacted version of the Brief. (*Id.*) At 8:41 a.m., on October 5, 2019, the Court informed the parties the Brief had been sealed and removed from public docket. (*Id.* at 6-7.) On Monday, October 7, 2019 at 9:32 a.m. and 9:46 a.m., Defendants received confirmation from PacerMonitor and Law360 that the brief no longer was accessible from their respective sites.

On October 31, 2019, Plaintiffs discovered a legal news website, MLex, had the Brief on its website. (ECF No. 147 at 3.) Plaintiffs contacted MLex on November 1, 2019, to request removing the Brief from that website. (*Id.*) Plaintiffs informed Defendants of this and of the fact that the website intended to publish an article about the Brief on November 5, 2019. (*Id.*) Defendants contacted MLex on November 6, 2019, seeking removal of the Brief from the website

and that MLex refrain from publishing an article linking to the Brief. (*Id.* at 4.) MLex refused both requests and published the article. (*Id.*)

### B. Procedural History

On October 15, 2019, Defendants filed this Motion, seeking "all sanctions that [the Court] deems appropriate," including that Plaintiffs pay all attorneys' fees and other costs associated with "remediating Plaintiffs' breach of the Stipulated Confidentiality Order, including costs associated with bringing" this Motion. (*See* Proposed Order (ECF No. 121-2) at 2; *see also* ECF No. 121-1 at 16.) RareGen filed its opposition to the Motion on November 4, 2019. (ECF No. 138.) Sandoz filed its opposition to the Motion that same date. (ECF No. 145.) Defendants filed a Reply on November 12, 2019. (ECF No. 147.)

## II.   LEGAL STANDARD

### A. Rule 37 Standard

The power of a district court to issue Confidentiality Orders arises from Rules 16(d), addressing pretrial orders generally, and 26(c)(7), dealing with orders to protect trade secrets or other confidential business information, of the Federal Rules of Civil Procedure. In this District, Local Civil Rule 5.3(b) also permits parties to enter protective orders pertaining to discovery. *Shevlin v. Phoenix Life Ins. Co.*, No. 09-6323, 2013 WL 1932937, at *2 (D.N.J. May 8, 2013)

Similarly, Rules 16 and 37 of the Federal Rules of Civil Procedure provide authority for courts to order a party to pay the reasonable expenses incurred because of that party's noncompliance with these Rules, unless the noncompliance "was substantially justified or other circumstances make an award of expenses unjust." *Miller v. Warren Hosp. IPA, PA*, No. 15-7496, 2018 WL 566214, at *7 (D.N.J. Jan. 26, 2018) (quoting Fed. R. Civ. P. 37(b)(2)); *see also* Fed. R. Civ. P. 16(f)(2); *In re Mushroom Direct Purchaser Antitrust Litigation,* 2012 U.S. Dist. LEXIS

5

12319 (E.D. Pa. Jan. 31, 2012) (finding that the Court issuing a Discovery Confidentiality Order

has enforcement power over the Order should there be a breach of its terms).

Yet, the Third Circuit observes that these formal rules do not exhaust a district court's

power to control errant behavior:

> To the contrary, the Supreme Court recently reaffirmed that a
> district court has *inherent* authority to impose sanctions upon those
> who would abuse the judicial process . . . . The Supreme Court
> explained that "[i]t has long been understood that certain implied
> powers must necessarily result to our Courts of justice from the
> nature of their institution, powers which cannot be dispensed with
> in a Court, because they are necessary to the exercise of all others."

*In re Cendant Corp.*, 260 F.3d 183, 199 (3d Cir. 2001) (citing *Republic of Philippines v.*

*Westinghouse Elec. Corp.,* 43 F.3d 65, 73 (3d Cir. 1994) (quoting *Chambers v. NASCO, Inc.,* 501

U.S. 32, 43–44, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991) (internal quotations and citations

omitted)).

Indeed, the Third Circuit has "emphatically stated that federal courts retain the inherent

power 'to sanction errant attorneys financially both for contempt and for conduct not rising to the

level of contempt.'" *In re Cendant*, 260 F.3d at 199 (citing *Eash v. Riggins Trucking, Inc.,* 757

F.2d 557, 566 (3d Cir. 1985); (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.

Ct. 2455, 65 L.Ed.2d 488 (1980)).

"To prove civil contempt the court must find that (1) a valid court order existed, (2) the

defendant had knowledge of the order, and (3) the defendant disobeyed the order." *John T. ex rel.*

*Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (citing *Harris v.*

*City of Philadelphia,* 47 F.3d 1342, 1350 (3d Cir. 1995)

These *Harris* elements must be proven by "clear and convincing" evidence, and

ambiguities must be resolved in favor of the party charged with contempt. *See Robin Woods, Inc.*

*v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994); *Harris,* 47 F.3d at 1350. The Third Circuit further cautions that where a party "*did* disobey a court order, but took all reasonable steps, in good faith, to comply with the order, and in fact substantially complied, [that party] may not be held in contempt." *Lookout Windpower Holding Co., LLC v. Edison Mission Energy*, No. 09-104, 2011 WL 13238016, at *3 (W.D. Pa. Feb. 22, 2011) (citing *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 676-77 (3d Cir. 1999).

Naturally, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *In re Cendant*, 260 F.3d at 200 (quoting *Philippines*, 43 F.3d at 74 (quoting *Chambers,* 501 U.S. at 44, 111 S. Ct. 2123). "A primary aspect of [a district court's] discretion is the ability to fashion an *appropriate* sanction for conduct which abuses the judicial process." *Id*.

Therefore, "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified . . . . [T]he court must consider the conduct at issue and explain why the conduct warrants sanction." *In re Cendant Corp.*, 260 F.3d at 199.

## III.   DECISION

Defendants seek sanctions "to remedy and punish Plaintiffs' violation of the Stipulated Confidentiality Order, including awarding Defendants attorneys' fees and costs associated with Plaintiffs' wrongful disclosure." (Defs.' Br. in Support of Mot. (ECF No. 121-1) at 1.)

RareGen opposes the Motion, arguing the disclosure was "an innocent filing mistake that was corrected by the Court and the parties within hours and thus caused no harm to Defendants." (RareGen Br. in Opp. to Mot. (ECF No. 139) at 1.) Sandoz opposes the Motion on the same basis of its co-Plaintiff, that "the facts and law give no basis for Defendants' requested relief," while

contending that sanctions against Sandoz would be particularly unjust since the "inadvertent public filing" was not made by, handled or directly overseen by Sandoz or its counsel. (Sandoz Br. in Opp. to Mot. (ECF No. 145) at 1, 2.)

The Court begins by examining the disclosure of the Brief through the lens of the *Harris* factors. As a predicate to an award of sanctions, Defendants must show (1) a valid court order existed, (2) that Plaintiffs knew about this Order, and (3) the Order was disobeyed. *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (citing *Harris,* 47 F.3d at 1326). It is apparent all three *Harris* prongs have been met.

First, it cannot be disputed there was a valid court Order. The Parties themselves submitted the Stipulated Confidentiality Order and sought its execution by the Court "for the purpose of advancing the progress of this action and to prevent the unnecessary dissemination or disclosure of their respective confidential information." (ECF No. 54 at 1.) That Confidentiality Order was executed by U.S. Magistrate Judge Lois H. Goodman on June 6, 2019 (ECF No. 55), making it an Order of the Court.

Second, because all Parties stipulated to the Confidentiality Order, it follows then that Plaintiffs knew about the Order.

As to the third prong, pursuant to this Order, material designated "Highly Confidential" can be disclosed only to outside counsel, the author of the material, and consultants who agree to be bound by the Order. (*Id,* ¶ 14(a).) "Confidential" material is limited to those same categories, plus in-house counsel identified in the Order. (*Id.* ¶ 14(b).) Though it is undisputed the Brief was filed publicly rather than under seal, the Confidentiality Order is disobeyed only if that Brief contained material designated by Defendants as "Highly Confidential" or "Confidential."

8

Defendants contend the Brief "is replete with highly sensitive competitive information that Defendants had designated Highly Confidential and Confidential." (ECF No. 121-1 at 3.) In the immediate aftermath of publicly filing the Brief, Plaintiffs told Defendants the Brief "should have been filed under seal because it contains information that has been designated as Highly Confidential." (ECF No. 121-6 at 9.) Plaintiffs also filed later that night a Brief that redacted material after giving Defendants the opportunity to suggest further redactions, an offer Defendants accepted. (*Id.* at 4, 5.) In opposing this Motion, RareGen has emphasized that the public filing of the Brief was "inadvertent," and "an accident," again conceding that the Brief contained material designated "Highly Confidential" or "Confidential." (ECF No. 139 at 1, 2, 4, 5, 8, 9, 11.) In opposing the Motion, however, Plaintiffs also briefly contend while the document should have been filed under seal, "little, if any, of the information contained therein will actually remain under seal" after the Court "determines what parts of the brief, if any, meet the strict requirements of the local rules for permanent sealing." (*Id.* at 14 (citing the L.Civ.R. 5.3(c) (covering motions to seal or otherwise restrict access)).)

The Court observes that whether information later is determined not to merit permanent sealing is not germane to the inquiry as to whether an order of this Court was valid or disobeyed when the Brief was publicly filed on October 4, 2019. As Plaintiffs otherwise concede that information in the Brief did contain material designated by Defendants as "Highly Confidential" or "Confidential," it is apparent the third *Harris* prong has been met.

This conclusion does not end the Court's inquiry, however. The Third Circuit cautions that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *In re Cendant*, 260 F.3d at 200 (quoting *Philippines*, 43 F.3d at 74 (quoting *Chambers,* 501 U.S.

at 44, 111 S. Ct. 2123)). Therefore, a district court must take pains to "fashion an *appropriate* sanction for conduct which abuses the judicial process." *Id.*

Plaintiffs argue no sanctions award is merited because "[t]here is no evidence of bad-faith conduct here, nor do Defendants even try to argue that Plaintiffs or their counsel acted in bad faith." (ECF No. 139 at 11.) Defendants argue Plaintiffs "did not take effective measures to have the information sealed" and, indeed, "took a lackadaisical approach to remedying their improper disclosure." The Court agrees with Plaintiffs there is little evidence of bad faith on their part and disagrees with Defendants' characterization of Plaintiffs' efforts as lackadaisical. The Court bases this determination on a review of the Statement of Facts submitted by the parties, and the declarations submitted in briefing this Motion to support those facts.

RareGen asserts that on learning the Brief had been publicly filed, it researched on the Court's filing system how to correct a filing mistake, it called the filing system's assistance lines for each New Jersey vicinage, it emailed the filing system's help desk address, and emailed three attorneys at Quinn Emanuel who once clerked for District of New Jersey judges seeking suggestions on how to remove filings from the public docket after the Court's regular business hours. (ECF No. 139 at 4 (citing 11/4/2019 Decl. of Heather K. Christenson (ECF No. 141) ¶¶ 7, 9-12); 11/4/2019 Dec. of Andrew M. Scott (ECF No. 142 ¶¶ 8.)[1] Later that night, Plaintiffs emailed a former Chief Judge of the District of New Jersey seeking suggestions on how to solve the public filing. (*Id.* at 5 (citing 11/4/2019 Decl. of Thomas D. Pease (ECF No. 144) ¶ 4).)

---

[1] Local Civil Rule 5.2(18) provides: "Once a document is filed electronically, changes can only be made by the Clerk's Office. The ECF System will not permit the filing party to make changes to the document or docket entry once the transaction has been accepted. Only upon an Order of the Court can a document be removed from the ECF System."

Plaintiffs also responded quickly to Defendants' notice of law-related websites that had copies of the Brief available for download by the public or subscribers. (*Id.* at 6 (citing 11/4/2019 Decl. of Michael D. Bonanno (ECF No. 143) ¶ 14).) Finally, Plaintiffs drafted an email to Defendants and a letter to the Court to explain the public filing of the Brief and, in the letter to the Court, to request sealing of the Brief. (*Id.* at 5, 7 (citing ECF No. 143 ¶¶ 10, 11, 20).) In other words, Plaintiffs actively sought to respond to Defendants' requests and to ameliorate any effects of failing to file the Brief under seal.

Defendants argue that whether Plaintiffs' filing was inadvertent is immaterial as a "finding of willfulness is not required to impose sanctions." (ECF No. 121-1 at 7-8 (citing *John T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (affirming sanctions imposed after party failed to comply with court order and finding argument that sanctioned party made "good faith efforts to comply" without merit because "[w]illfullness is not a necessary element").) In *John T.*, however, the Third Circuit was reviewing the imposition of sanctions under an "abuse of discretion" standard, and it held that the lower court did not abuse its discretion in awarding sanctions as "evidence . . . regarding . . . good faith does not bar the conclusion . . . that [the defendant] acted in contempt." *Id.* at 552 (citing *Harley-Davidson, Inc. v. Morris,* 19 F.3d 142, 148–49 (3d Cir. 1994). The Court infers from *John T.* that while evidence of good faith does not bar a determination of contempt, it does not require sanctions either. This inference finds support in *Harley-Davidson*, where the Third Circuit held that the testimony of a party regarding "intent and willfulness was relevant" to a contempt proceeding at least for determining the extent of any sanction to be imposed. 19 F.3d at 148-49.

Defendants counter that even were good faith a defense against a contempt finding, "Plaintiffs did not attempt to comply with the Confidentiality Order in good faith." (Defs.' Reply

(ECF No. 147) at 8.) Specifically, Defendants argue Plaintiffs did not, as the Order requires "employ 'reasonable measures to control . . . duplication of, access to, and distribution of Protected Information." (*Id.*) Defendants contend the reliance on a "clerk" to file highly confidential information with the Court was unreasonable, especially when the Confidentiality Order "expressly charges the 'attorney of record' with responsibility for compliance with the order." (*Id.* at 12 (citing ECF No. 55 ¶ 34).)

Plaintiffs respond that the filer was no "clerk," but rather a nonpracticing attorney who is in good standing with the Bar of the State of New York and has "more than 10 years of experience with ECF filings, including approximately three years of experience filing documents under seal in the District of New Jersey. (ECF No. 139 at 3-4.) Plaintiffs contend this filer "understood from his discussions with [Plaintiffs' counsel] that the brief was to be filed under seal." (*Id.* (citing ECF No. 143 ¶ 6.) From this record, the Court concludes Plaintiffs did employ "reasonable measures" to comply with the Order.

Defendants contend sanctions are required because "Plaintiffs' misconduct has exposed Defendants' highly sensitive competitive material to the world" and "the release of this information is irreversible and significant." (ECF No. 121-1 at 8.) Plaintiffs counter that Defendants' Motion "fails to explain how the overnight disclosure of their information in the brief caused them a clearly-defined injury." (ECF No. 139 at 15.) Defendants reply that the burden is on Plaintiffs to show the harmlessness of their violation. (ECF No. 143 at 9 (citing *Pfizer Inc. v. Teva Pharm. USA, Inc.*, No. 04-754, 2006 WL 2938723, at *4 (D.N.J. Oct. 13, 2006)). However, Defendants misstate Plaintiffs' burden because *Teva* dealt with the imposition of sanctions pursuant to Rule 37(c), titled "Failure to Disclose, to Supplement an Earlier Response, or to Admit." *Id.* The Rule 37 subsection for "The Failure to Comply with a Court Order" is Rule 37(b),

which requires the payment of expenses by the disobedient party "unless the failure was substantially justified or other circumstances make an award of expenses unjust," meaning Plaintiffs' burden here is a showing that the disclosure was "substantially justified or [that] other circumstances make an award of expenses unjust."

Plaintiffs argue sanctions here would be unjust because the disclosure was inadvertent, Plaintiffs and their counsel acted in good faith and intended to comply with the terms of the Confidentiality Order by filing the Brief under seal, and the public filing was swiftly corrected.

Defendants counter that sanctions would be just because, in addition to its arguments raised about Plaintiffs' unreasonable processes, "Defendants should not have to bear expenses reasonably incurred to address and remediate Plaintiffs' wrongful conduct. (ECF No. 147 at 8.) The Court is not persuaded.

Sanctions serve two purposes: "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (citing *McDonald's Corp. v. Victory Investments,* 727 F.2d 82, 87 (3d Cir. 1984)). In *Robin Woods*, the Third Circuit quoted the Fifth Circuit's observation that

> It matters not whether the disobedience is willful[;] the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order.

*Robin Woods*, 28 F.3d at 400 (quoting *Cook v. Ochsner Found. Hosp.,* 559 F.2d 270, 272 (5th Cir. 1977)). Applying this reasoning to this dispute, the Court identifies three bases for denying an award of sanctions, though it is undeniable Plaintiffs violated the Confidentiality Order by failing to file the Brief under seal.

First, the Third Circuit since *Robin Woods* has formally adopted the defense of substantial compliance. *See F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 591 (3d Cir. 2010). "[T]o avail

oneself of the defense, a party must show that it (1) has taken all reasonable steps to comply with the valid court order, and (2) has violated the order in a manner that is merely "technical" or "inadvertent." *Id.* The Court is persuaded Plaintiffs have made a sufficient showing of those prongs.

Plaintiffs assert:

> RareGen and [RareGen's Counsel] Quinn Emanuel took reasonable steps to comply with the Confidentiality Order—and did everything Defendants demanded after the mistake was identified. Quinn Emanuel attorneys provided clear and express instructions to its expert filing team that the brief should be filed under seal. (ECF No. 141 ¶¶ 4–6.) Quinn Emanuel attorneys closely supervised the work of the filing clerk. (*Id.*) The filing clerk [] had filed documents under seal in federal court using ECF countless times before. (ECF No. 142 ¶¶ 3–4.) And the violation of the Confidentiality Order was clearly "inadvertent." [The filing clerk] intended to file the brief under seal, consistent with the directions provided by counsel of record. (*Id.* ¶¶ 6–7.) The public filing of the brief was an accident.

(ECF No. 139 at 10-11.) The Court is not persuaded by Defendants' contention that having a filing clerk handle the filing of documents under seal with the Court is unreasonable. Moreover, the Court concludes from Plaintiffs' colloquy that they took reasonable steps to comply with the Confidentiality Order.

As to the second substantial compliance prong, Plaintiffs contend the failure to file the Brief under seal was inadvertent, and an accident. Defendants do not dispute that characterization directly, though they refer repeatedly to Plaintiffs' "misconduct." (*See, e.g.,* ECF No. 149 at 9 ("Plaintiffs' misconduct has saddled Defendants with a continuous, ongoing injury").) Still, Defendants proffer no credible explanation, or even theory, for why the public filing cannot be characterized as "inadvertent." The Court sees no basis on this record for disputing Plaintiffs' assertion that the public filing was inadvertent. Therefore, the Court determines Plaintiffs have successfully demonstrated a defense of substantial compliance.

Even were the Court not inclined to deny sanctions on the basis of substantial compliance, the Court is not persuaded by the three grounds Defendants provide to explain the harm caused by the inadvertent public filing that Defendants maintain merits sanctions.

First, Defendants argue the inadvertent public filing and ensuing briefing for this Motion diverted their attention from defending against Plaintiffs' Motion for a Preliminary Injunction. (ECF No. 149 at 9.) But this does not demonstrate injury as Defendants successfully defended themselves against that motion, as a preliminary injunction was not granted. (*See* Opinion, ECF No. 168.)

Second, Defendants further argue the publication of the "highly confidential" and "confidential" material in the Brief has resulted in a continuous, ongoing injury. Yet, Defendants have not alleged any specific injury from public viewing of this material. Rather, any injury is speculative. In the absence of any tangible alleged injury, asking Plaintiffs to bear the burden of demonstrating the harmlessness of the inadvertent filing is asking Plaintiffs to prove a negative, a burden Courts are reluctant to impose on any party.  *See Visintine v. Zickefoose*, No. 11-4678, 2014 WL 4388609, at *8 n.27 (D.N.J. Sept. 5, 2014) (citing *United States v. Napolitan,* 2014 U.S.App. LEXIS 15112, 2014 WL 3843971 (3d Cir. Aug. 6, 2014) (noting the court should not "essentially require the [party] to prove a negative").)

Finally, Defendants argue they should not have to bear expenses reasonably incurred to address and remediate Plaintiffs' wrongful conduct. (ECF No. 147 at 8.) Indeed, Defendants contend their "case for sanctions could not be more straightforward," because Plaintiffs publicly filed Defendants' confidential material, then "failed to remediate that wrongful disclosure, foisting the burden on Defendants." (ECF No. 147 at 2.)

The Court observes Defendants were able to remediate the wrongful disclosure on that Friday night in October 2019 only because they possessed a tool Plaintiffs lacked: the personal email of the Court that Defendants' counsel had received from the Court in another case. (ECF No. 121-1 at 6.) Defendants used that email address to contact the Court directly at 11:33 p.m. to alert the Court of the public filing; the Court granted that request at 11:44 p.m., though it was through an 8:44 a.m. email the next day that Defendants learned the Brief was sealed and removed from the public docket. (*Id.*) In other words, Defendants knew of the public filing of their confidential material at 6:35 p.m. on October 4, 2019, and knew at 7:54 p.m. that Plaintiffs had no effective solution other than waiting until Monday morning when the Courthouse opened to communicate with the Clerk of the Court, but still Defendants waited until 11:35 p.m. before alerting the Court to this issue.

Sanctions are intended, in part, "to compensate for losses sustained by the disobedience." *Robin Woods*, 28 F.3d at 400 (citing *McDonald's Corp. v. Victory Investments,* 727 F.2d 82, 87 (3d Cir. 1984)). Here, the inescapable conclusion is that Defendants contributed to the escalation of costs that Defendants themselves complain of in this Motion by waiting at least three-and-a-half hours before using the email address for the Court that only Defendants had to notify the Court of the public filing. Accordingly, the Court concludes sanctions are inappropriate.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Sanctions (ECF No. 121) is **DENIED.** An appropriate order will follow.

Date: June 30, 2020                    */s/ Brian R. Martinotti*
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**