## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDOZ, INC., *et ano.*,<br><br>           Plaintiffs,<br><br>      v.<br><br>UNITED THERAPEUTICS CORP., *et ano.*,<br><br>           Defendants. | Civil Action No.: 19-cv-10170<br><br><br>**OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER REGARDING DEFENDANT'S REQUEST FOR SETTLEMENT RELATED DISCOVERY** |

**LINARES, J.**

This matter comes before the Special Master by way of a letter brief dated December 15, 2020 ("Request") from counsel for Defendant United Therapeutics Corporation ("UTC") requesting discovery relating to Plaintiffs' settlement negotiations with defendant Smiths Medical ASD, Inc. ("Smiths"). The Special Master has reviewed the submissions, including the December 21, 2020 Response from Plaintiffs Sandoz, Inc., and Raregen, LLC, UTC's December 30, 2020 Reply letter, subsequent email communications from the parties dated December 30, 2020 and December 31, 2020, and the relevant controlling law. On January 12, 2020, the Special Master held oral argument on this matter. For the reasons set forth below, the Special Master makes the following findings and determinations, and rules as follows.

## I.   INTRODUCTION

The Special Master presumes that the parties are familiar with the facts surrounding the underlying action and claims. Accordingly, the Special Master will only recite the relevant procedural and factual background necessary to dispose of the dispute at hand.

Defendant UTC seeks discovery relating to settlement negotiations between Plaintiffs and defendant Smiths Medical.  In December 2019, Plaintiffs and defendant Smiths agreed to mediate their claims.  An in-person mediation session was held on January 31, 2020 with Hon. Faith Hochberg, U.S.D.J. (ret.) serving as the mediator.  Plaintiffs and Smiths thereafter signed a settlement term sheet on November 6, 2020.

Specifically, UTC seeks documents relating to Plaintiffs' negotiations with Smiths beginning in 2019 until the settlement term sheet signed on November 6, 2020.   UTC is not seeking any communications with the mediator or any submissions made to the mediator during the mediation process agreed to by Plaintiffs and Smiths.

UTC argues that the documents are relevant to a "critical issue" in the case – plaintiffs' alleged failure to timely obtain a subcutaneous delivery device for generic treprostinil.  UTC argues this evidence is important to rebut plaintiffs' claim that defendants UTC and Smiths Medical prevented Sandoz from entering the market.

UTC also points to the fact that plaintiffs tried to resolve these issues with Smiths Medical *before* they filed suit and have produced those related documents, arguing that discussions that happened after the complaint was filed are no different than those that occurred prior.  UTC further argues that the documents it seeks now are no different than documents plaintiffs previously produced that relate to their discussions with other device manufacturers about potential delivery devices and cartridges.

Plaintiffs argue, on the other hand, that settlement discussions, including drafts of the settlement term sheet, are not relevant.  Moreover, Plaintiffs argue that these documents are protected from disclosure by the mediation privilege.

In reply, UTC argues that Plaintiffs affirmatively put these settlement discussions at issue during the preliminary injunction phase of the case and that the mediation privilege does not apply.

## II. DISCUSSION

UTC's arguments are persuasive that there is some level of relevancy here that indicates that it would be entitled to the information sought.  However, based on the limited record before the Special Master, more information is required in order to determine whether the mediation privilege applies to protect these documents from disclosure.

*D. N.J. Local Civ R 301.(e)(5)* states:

> All information presented to the mediator shall be deemed confidential unless requested otherwise and shall not be disclosed by anyone, including the mediator, without consent, except as necessary to advise the Court of an apparent failure to participate . . .No statements made or documents prepared for mediation shall be disclosed in any subsequent proceeding or construed as an admission.

The question as to whether the mediation privilege applies, thus turns on whether the settlement negotiations "have a clear nexus to the mediation."  Both parties discuss *US Fid. & Guar Co. v. Dick Corp.*, 215 F.R.D. 503 (W.D.Pa 2003), which, although a decision interpreting Pennsylvania's statutory mediation privilege, is instructive.

In *Dick Corp.*, the parties agreed to mediation with a professional mediator who conducted one session on November 30, 2000. The session did not result in an agreement.  After the single mediation session, the parties continued to discuss a settlement on their own and kept the mediator apprised. Sometime between late December, 2000 and February, 2001, the parties reached a settlement agreement. The mediator had no further contact with the parties involving settlement negotiations or documents related to the settlement after December 20, 2001. The

parties entered into a formal settlement agreement on or before February 2, 2002. *Id.*, 215 F.R.D. at 505.

The Court held that the settlement agreement was discoverable because communications purely between the parties and not involving the "active participation" of the mediator are not privileged. In so holding, however, the Court noted the following specific facts:

> [The mediator's] declaration does not indicate that he had any significant involvement in helping to reach the ultimate terms and structure of the settlement reached by the parties. Instead, his declaration confirms the limited nature of his involvement after the November 20, 2000 failed mediation attempt. We might have quite a different view had the evidence indicated that the parties and Mr. Green explicitly agreed upon a mediation process which contemplated one face to face meeting on November 20th and a number of follow up sessions by telephone. There is nothing in the evidence to support the existence of such an agreement.

The Court concluded that:

> discussions among parties outside the presence of the mediator and not occurring at a mediation proceeding are not privileged. Where the mediator has no direct involvement in the discussions and where the discussions were not designated by the parties to be a part of an ongoing mediation process, the rationale underlying the mediation privilege (i.e., that confidentiality will make the mediation more effective) is not implicated. The mere fact that discussions subsequent to a mediation relate to the same subject as the mediation does not mean that all documents and communications related to that subject are "to further the mediation process" or prepared for the purpose of, in the course of, or pursuant to mediation.

*Id.*, 215 F.R.D. at 506.

The Court also looked to federal case law construing the federal mediation privilege for guidance:

> In *Folb v. Motion Picture Indus. Pension & Health Plans,* 16 F.Supp.2d 1164, 1180 (C.D.Cal.1998), the court held that holding settlement discussions and exchanging related documents were not protected by the federal mediation privilege simply because they

> occurred, or were created, following a mediation.  [S]ubsequent negotiations between the parties ... are not protected even if they include information initially disclosed in the mediation. A contrary rule would permit a party to claim the privilege with respect to any settlement negotiations so long as the communications took place following an attempt to mediate the dispute.

*Id.*, 215 F.R.D. at 506-507.

The Court then discussed circumstances under which documents created after the mediation may be privileged.

> We believe that documents created subsequent to the mediation process may be protected by the privilege to the extent that they have a clear nexus to the mediation. These would include drafts of settlement proposals agreed upon at mediation.
>
> However, under the facts of the instant case, plaintiffs have failed to establish any nexus between the subsequently created documents and the mediation process. The documents in question cannot be tied to the November 20th mediation or to any subsequent activity by the mediator. There is no evidence of any sort of approval of the mediator or suggestions by him as to how to resolve disputed points in the ongoing exchange of settlement proposals following his initial involvement.
>
> . . . we interpret "the language of Pennsylvania's mediation privilege as extending its protection to mediator-brokered settlements, but not to settlements that were simply reached following a mediation. Thus, there must be a sufficient nexus between the mediator's involvement with the parties and the settlement reached by the parties. That nexus has not been established with regard to the Settlement Agreement.

*Id.*, 215 F.R.D. at 507.

Here, aside from general statements from Plaintiffs' counsel that the mediator continued to be involved in settlement discussions after the in-person mediation session, the record before the Special Master is devoid of any declaration from the mediator or any specific facts that detail the extent of participation by the mediator after the initial in-person mediation. During oral argument on this application, however, Plaintiffs' counsel advised the Special Master that after

the in-person mediation in January 2020, the mediator made a proposal to the parties on June 30, 2020 that ultimately led to the November 6, 2020 term sheet. The asserted mediator's June 30th proposal indicates that the mediator was involved in more discussions with the parties after the in-person mediation.

### III.   CONCLUSION

Accordingly, the Special Master holds that Plaintiffs shall prepare a privilege log in accordance with F.R.C.P. 26 identifying the documents claimed to be protected from disclosure by the mediation privilege.  In addition, the Special Master holds that Plaintiffs shall request that the mediator prepare a statement describing the nature and extent of the mediator's involvement in settlement discussions between Plaintiffs and Smiths after the in-person mediation conducted in January 2020.  This statement should be limited to information such as dates and level of participation in phone calls or written communications and should not contain the substance of any of those discussions or communications.  The mediator statement must be provided to the Special Master and to all parties in this action.

### IV.   ORDER

For the foregoing reasons, it is on this 25th  day of January 2021,

**ORDERED** that Plaintiffs shall prepare and serve a privilege log in accordance with F.R.C.P. 26 identifying the documents claimed to protected from disclosure by the mediation privilege within 30 days.  The parties are to meet and confer regarding any challenges by UTC to the privilege log within 10 days thereafter.  If a dispute remains after this meet and confer, UTC shall so advise the Special Master by letter, limited to 5 pages, within 10 days, identifying the documents it seeks to challenge; and it is further

ME1 34976685v.2

**ORDERED** that Plaintiffs shall request that the mediator prepare a statement describing the nature and extent of the mediator's involvement in settlement discussions between Plaintiffs and Smiths after the in-person mediation conducted in January 2020.  This statement should be limited to procedural information, such as dates and level of participation in phone calls or written communications, and should not contain the substance of any of those discussions or communications.  The mediator statement shall be provided to the Special Master and to all parties in this action.

**SO ORDERED**.

___/s/ *Jose L. Linares*_____

Hon. Jose L. Linares, U.S.D.J. (Ret.)

ME1 34976685v.2